May Term,
1851.

BASHOR
v.
CADY.

Monday,
June 2.

BASHOR v. CADY.

If a party neglect to assert a right to re-purchase within the time limited therefor, he will wholly lose his right.

ERROR to the *Henry* Circuit Court.

PERKINS, J.—This was a bill in chancery by *Benjamin J. Cady* against *Michael Bashor* to redeem three lots in the town of *Newcastle*, *Henry* county, alleged to have been conveyed to *Bashor* as security for a debt. The bill avers a tender of the money owed and a demand of a deed of re-conveyance, and states the facts of the case to be, that in *June*, 1838, said *Bashor* "purchased a judgment against your orator [*Cady*] on the docket of one *Ramsey*, a justice of the peace of *Elkhart* county, *Indiana*, [where plaintiff and defendant then resided], amounting to about 68 dollars; that he threatened to issue execution upon it against the goods and chattels of your orator, and, in default of those, against his body, for the purpose of making the money; that to prevent this, the lots in question, then worth 400 dollars, were conveyed by a deed, absolute in form, from said plaintiff to said *Bashor*, but which deed, by agreement of the parties, was to operate only as security for the ultimate payment of the judgment; that the deed was to be left with one *Elias Carpenter*, a justice of the peace in *Goshen*, in said county, as an escrow, till said *Bashor* should execute a defeasance-bond for the re-conveyance of said lots, when said deed was to be delivered by said justice to said *Rashor*." The bill charges that *Bashor* never executed the defeasance-bond, and fraudulently procured the deed to be delivered to him by the justice, and now claims to be the absolute owner of the lots.

*Bashor*, in his answer, denies the allegations in the bill except so far as they are admitted in the following statement, which, he avers, contains the truth of the case, viz., that he was the owner by purchase of the judgment mentioned in the bill and that there was also another judgment on the docket of the same justice in favor of

another person against said *Cady* for an amount which made the aggregate of the two judgments, 77 dollars and 85 cents exclusive of costs; that executions were issued on both of said judgments to the proper constable in *Elkhart* county, by virtue of which he sold the personal property of said *Cady* in said county for the payment of said judgments and costs, said *Bashor* being the purchaser, at the sum of 89 dollars and 22 cents, which was paid; that, afterwards, he, said *Bashor*, sold said property back to said *Cady*, and took said *Newcastle* lots in payment, verbally agreeing with said *Cady*, at the time, that if, by the first of the next following *September*, he, said *Cady*, would pay him 100 dollars cash, he would re-convey to him the lots; that *Cady* took the personal property, worth near 200 dollars, conveyed to said *Bashor* the lots, moved away from *Elkhart* county, and was not heard of by defendant for nine years afterwards, when he sent an agent to tender to defendant the money, and demand a deed for the lots; the amount of money tendered being 140 dollars; that he did not know when he took them, what the lots were worth; could not then have sold them for 150 dollars; *Cady* represented them as being worth as much as the personal property.

General replication to this answer.

The substance of the testimony is as follows:

*Alexander Carr*, constable, states that he had in his hands the two executions mentioned in the answer; that he sold *Cady's* personal property for their payment; that it was purchased by, and delivered to, *Bashor;* it sold for more than the amount of the judgments, and they were paid and satisfied; he subsequently saw most of the property in *Cady's* possession, and *Cady* told him he had compromised with *Bashor*, and bought it back; that it was worth near 200 dollars.

*Jesse Hillbush* states that he was present when *Bashor* and *Cady* made the bargain; that *Cady* wished *Bashor* to take the lots in *Newcastle* in payment for the personal property; that *Bashor* at first declined, insisting on the money, but finally agreed to take the lots.

*Benjamin Crary* says *Cady* had, a few months before the sale, and before *Bashor* had purchased the larger of said two judgments, offered, to the then owner of it, to give said *Newcastle* lots in payment and satisfaction of said larger judgment alone; has heard both parties say, since the trade, that the lots were given absolutely in payment for the personal property.

*Elias Carpenter*, took the acknowledgment of the deed from *Cady* to *Bashor;* it was made to secure a debt of from 60 to 80 dollars; don't know for what purpose it was made; it was made for personal property received by *Cady* at the time from *Bashor; Bashor* was not present when the acknowledgment of Mrs. *Cady* was taken; witness thinks he did not represent to her that it was a deed of security; recollects of no understanding that the deed was to remain with him till a defeasance-bond, or anything else, was executed by *Bashor;* after the execution of the deed, *Bashor* proposed to *Cady* that if, by a certain time thereafter, he would pay him a certain sum of money, he would deed him back the lots at that time; can't name the exact time nor amount; thinks it was some reasonable time.

*Polly Martindale* says the deed was acknowledged before Esq. *Carpenter*, and that *Bashor* and *Cady* were both present; that the deed was to be left with *Carpenter* till *Bashor* executed a defeasance-bond; the deed was to be a security; Mrs. *Cady* asked *Carpenter* if the deed she acknowledged was a deed of sale, and he replied, no, it was a deed of security.

*Wilson Clift* states that *Bashor* told him he had taken the lots as security for the payment of the property and money *Cady* owed him, but did not say what amount nor when it was to be paid; that he had taken the lots for the personal property and some money, and that if *Cady* would yet come forward and pay him his money and interest, and for his trouble, he might still have the lots, though the time had expired in which he was to let him have them.

The lots are valued at from 250 to 500 dollars, though

it appears there was a defect in the title on account of which neither *Bashor* nor *Cady* could sell them at their full value. *Bashor* had paid, since his purchase, between 30 and 40 dollars on account of liens on the lots, not created by himself. After the sale of the lots to *Bashor*, *Cady* left *Elkhart*, and went to *Miami* county, where he remained over nine years without ever tendering the money for, or demanding a conveyance of, the lots. When the money was tendered, *Bashor* refused to receive it, and to answer the attorney tendering it, any questions.

A couple of witnesses stated that the deed was made to secure the re-payment of an amount of cash borrowed by, and actually paid over to, *Cady* at the time; but, as this makes a case entirely out of the bill itself, we did not embody their statements among the evidence in the cause.

Decree below for the plaintiff.

The allegations that the deed for the lots was to be left with the magistrate as an escrow, and a defeasance-bond executed, are not established. They are denied by the answer; but one witness, *Polly Martindale*, swears to them, and she is contradicted by the magistrate, *Carpenter*. The witness, *Clift*, resided at *Newcastle*, knew nothing personally of the transaction, and only swears to remarks made under such circumstances as not to make them the most reliable evidence of the exact nature of the transaction, and of such a character as to be applicable, according as construed, to a mortgage or conditional sale. The other witnesses, most of them resided in *Elkhart* county, were present at the transaction, and give us its exact character. Construed together, the evidence does not support the bill. It does not show that the lots in question were conveyed as a security for the payment of any debt, or the performance of any duty; but as an absolute payment for property purchased. Whether the facts amount to a valid conditional sale or not, the right of re-purchase not being evidenced by a written instrument, we need not now inquire; for, by a neglect to assert that right, if it existed, within the time limited

May Term, 1851.

BASHOR
v.
CADY.

therefor, the right was wholly lost. 4 Kent 144, and note.—*Galt* v. *Jackson*, 3d Vol. U. S. Law Mag. 585.— S. C. 9 Geo. R. 151.

*Per Curiam.*—The decree is reversed with costs. Cause remanded.

S. *W. Parker*, for the plaintiff.

J. *S. Newman*, for the defendant.